NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MATTHEW MICHAEL TRIGGS, *Petitioner/Appellee*,

*v.*

EMILY TRIGGS, *Respondent/Appellant*.

No. 1 CA-CV 22-0543 FC
FILED 5-16-2023

Appeal from the Superior Court in Yavapai County
No. P1300DO202100069
The Honorable Cele Hancock, Judge

**REVERSED AND REMANDED**

COUNSEL

Mull & Brown, PLLC, Prescott
By John G. Mull
*Counsel for Petitioner/Appellee*

Community Legal Services, Inc., Prescott
By Martin J. Coleman
*Counsel for Respondent/Appellant*

_____

## MEMORANDUM DECISION

Vice Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Andrew M. Jacobs joined.

_____

**G A S S**, Vice Chief Judge:

¶1            Among other issues, mother appeals the superior court's final parenting-time order based on the parents' mediated agreement. Because the agreement did not address the situation present at the time of the trial, the superior court needed to exercise its independent judgment to determine mother's parenting time. We, thus, reverse and remand for further proceedings for the superior court to exercise such judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶2            Mother, a citizen of the Philippines, and father were divorced in 2019 in the U.S. Territory of Guam through a consent decree. The consent decree included a settlement agreement with a separate parenting plan for their child, E.T.

¶3            The 2019 consent decree provided parenting time would occur in the Philippines and allocated father up to two, six-week blocks of uninterrupted vacation time annually. In November 2019, father brought E.T. to the United States on vacation to visit father's family. Father never returned E.T. to the Philippines. Even so, mother and E.T. communicated regularly by audio and video calls until February 2020, when E.T. stopped communicating with mother.

¶4            In 2021, father registered the 2019 consent decree in the Arizona Superior Court in Yavapai County. Father later petitioned to terminate mother's parental rights.

¶5            In September 2021, mother petitioned for relocation, modification of legal decision-making, parenting time, child support, and other declaratory relief. At the resolution management conference, both parents requested mediation, which the superior court ordered.

¶6            Mother, father, and their counsel attended the mediation. The mediation agreement provided E.T. would live with father and established a reunification plan for mother and E.T. through a licensed counselor

chosen by both parents. E.T. had an existing counseling relationship with the chosen counselor. For reunification and subsequent parenting time, the mediation agreement provided:

> The parents agree to utilize Dr. Stacie Brown as a therapist for mother's reunification counseling.
>
> Father agrees to pay 100% of the cost for this counseling.
>
> Father agrees to contact the counselor and initiate this reunification counseling as soon as possible.
>
> The counselor will provide a short summary progress report to both parents after each reunification session.
>
> At the end of six months of reunification counseling, the therapist will provide an overall summary of the progress to date to both parents. If the reunification is complete, the therapist will document this and if there is a fundamental reason to continue the sessions, the rationale and timeframe for that will be documented.
>
> . . . .
>
> Once the reunification counseling is complete, mother will have two telephone or video chats with the child each week. Mother and the child will have privacy during these chats.

¶7             The agreement deferred the following to the superior court: (1) issues of effective parenting; (2) communication between the parents and periodic review of the parenting plan; (3) date, time, and frequency of mother's video or phone calls with E.T.; and (4) the initial appointment with the agreed upon counselor. The superior court set trial for May 2022.

¶8             In January 2022, Dr. Brown issued her first report. Based on father's and E.T.'s allegations of mother's abuse of E.T., Dr. Brown opined E.T. was "not therapeutically ready to have contact and/or communication" with mother. But Dr. Brown anticipated E.T. would be ready for reunification sessions after six to eight more personal sessions.

¶9             In April 2022, Dr. Brown issued her second report. In that report, Dr. Brown described her reunification efforts until that point—including two attempts to connect E.T. with mother through telehealth video calls. Dr. Brown opined E.T. was not ready for reunification and

recommended postponing reunification counselling until E.T. turns 12-years-old, which is not until late 2023. Additionally, Dr. Brown conducted no reunification counseling sessions after the second report. Mother then moved to revoke the mediation agreement.

¶10       After the May trial, the superior court denied mother's motion to revoke, finding the mediation agreement was binding and the superior court lacked any authority to modify it. The superior court then addressed some issues the parents deferred to the superior court in the mediation agreement, specifically guidelines for effective parenting and communication between the parents. The superior court did not establish the frequency and duration of mother's contact with E.T., saying the parents already agreed to those details once E.T. completed reunification counseling. The superior court also did not establish a periodic review for the parenting plan.

¶11       This court has jurisdiction over mother's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, and -2101.A.1.

## ANALYSIS

¶12       An Arizona court has jurisdiction to make an initial child custody determination if Arizona "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding . . . ." A.R.S. § 25-1031.A. Arizona has been E.T.'s home state for more than six months before mother or father filed anything in Arizona because since December 2019, father and E.T. resided in Arizona and neither mother, father, nor E.T. resided in Guam. The superior court, thus, properly exercised jurisdiction over this case. *See id.*

¶13       On appeal, mother argues the superior court improperly delegated the authority to determine parenting time to Dr. Brown when it upheld the mediation agreement's parenting time provision, even though Dr. Brown had abandoned all reunification efforts with mother. As such, mother argues the exception allowing the superior court to delegate decisions to a reunification counselor set out in *Gish v. Greyson*, 253 Ariz. 437, 447 ¶ 45 (App. 2022) does not apply here.

¶14       As *Gish* recognized, the superior court generally "can neither delegate a judicial decision" to a reunification counselor "nor abdicate its responsibility to exercise independent judgment." *See* 253 Ariz. at 447 ¶ 46 (citation omitted). But the superior court may delegate the determination of

4

parenting time to a reunification counselor under an express agreement between the parents. *See id.* at 447 ¶ 49. The superior court, in its order, noted the parents here entered into such an express agreement delegating the determination of parenting time to Dr. Brown during the reunification process. Additionally, because the superior court adopted the mediation agreement as an enforceable order, it concluded it lacked discretion to modify the mediation agreement's terms. *See* R. Fam. L. P. 69(a); *see also Engstrom v. McCarthy*, 243 Ariz. 469, 472 ¶¶ 8, 9 (App. 2018).

¶15 The superior court's conclusion is accurate, but only to the extent of the mediation agreement's terms. In that regard, the mediation agreement's reunification plan expressly governs everything the parents explicitly agreed to in it. Under the mediation agreement, Dr. Brown would provide a summary to the parents after each counseling session and a summary of counseling after six months. Once Dr. Brown completed reunification counseling, she was to document it. Alternatively, if there was a "fundamental reason" to continue counseling after six months, Dr. Brown would document the rationale and timeframe for the continued counseling sessions.

¶16 The mediation agreement, however, did not say what was to occur if, as here, Dr. Brown suspended reunification counseling before six months and provided no timeframe for reengaging in reunification counseling beyond postponing it for more than 18 months. For that reason, the mediation agreement does not govern this circumstance. The superior court, thus, cannot "abdicate its responsibility to exercise independent judgment[,]" and must determine mother's parenting time. *See Gish*, 253 Ariz. at 447 ¶ 46 (citation omitted).

¶17 We decline to consider the other issues mother raises because this decision renders them moot and they are unlikely to recur on remand.

## ATTORNEY FEES AND COSTS

¶18 Mother requests attorney fees and costs on appeals under A.R.S. § 25-324 and ARCAP 21. Father requests attorney fees and costs under A.R.S. § 25-324, ARCAP 21, and Rule 69(c) of the Arizona Rules of Family Law Procedure. This court may award attorney fees after considering the financial resources and reasonableness of the parents' legal positions. A.R.S. § 25-324.A. After considering the relevant factors, we exercise our discretion and decline to award attorney fees.

¶19 As the successful party on appeal, we award mother her reasonable costs upon compliance with ARCAP 21.

**CONCLUSION**

¶20      We reverse and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA